IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GEORGIANNA G. MARTIN, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:04-22522-CMC-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Social Security Income (SSI) on January 31, 2002, and for Disability Insurance Benefits (DIB) on February 5, 2002, alleging disability as of October 10, 2000 due to osteoarthritis, color blindness, high blood pressure, and "nerves". (R.pp. 76-78, 122, 361-363). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 13, 2004. (R.pp. 376-421). The ALJ thereafter denied Plaintiff's claims in a decision issued May 28, 2004. (R.pp. 11-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the



determination of the ALJ the final decision of the Commissioner. (R.pp. 6-8).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

2



**Discussion**

A review of the record shows that Plaintiff, who was fifty-one (51) years old at the time she alleges she became disabled, has a high school education with past relevant work experience as a sewing machine operator and a nurses aide. (R.pp. 76, 123, 128). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform any of her past relevant work, she nevertheless retains the residual functional capacity to perform low stress, unskilled,[1] medium work,[2] and was therefore not disabled. (R.pp. 20-21).

Plaintiff asserts that in reaching his decision, the ALJ erred by failing to properly evaluate Plaintiff's impairments, and by finding that Plaintiff is capable of performing substantial gainful activity. Plaintiff specifically complains that the ALJ should have found her impairments met the requirements of Listing 1.00 (musculoskeletal system) and/or 12.00 (mental disorders) of

---

[1] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. §§ 404.1568(a), 416.968(a) (2004).

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). "If someone can do medium work," they are also considered capable of performing the less strenuous requirements of sedentary and light work. Id.



3

the Listings of Impairments.[3] However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

## I.

First, with respect to Plaintiff's physical condition and capabilities, the medical record contains several reports and evaluations supportive of the ALJ's conclusion that Plaintiff retains the ability to perform a broad range of medium work. Following a consultative examination performed by Dr. Anil Kudchadkar on January 17, 2001, Dr. Kudchadkar opined that Plaintiff could engage in gainful activity both from his own examination and from Plaintiff's own description of her daily living activities. (R.p. 174). Plaintiff's physical examination revealed bilateral 20/20 vision, a normal gait and posture, no obvious muscular atrophy, and normal muscle tone and strength with no rigidity. While an x-ray of Plaintiff's lumbar spine did show degenerative disc disease at L4-5, an x-ray of her hip showed normal appearing S1 joints, and Plaintiff could walk on her heals and toes, her straight leg raising tests were positive at 90° in a sitting position, positive 80° on the left in a supine position, and positive at about 50° on the right in a supine position. Plaintiff herself stated that she could walk for about half a mile, stoop, squat, kneel, reach, and bend, carry and lift up to 10 pounds, and push and pull up to 50 pounds. (R.pp. 172-175).

---

[3] A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2005).



4

During a second consultative examination performed by Dr. Kudchadkar on April 10, 2002, Plaintiff repeated her statement that she was able to stoop, squat, kneel, reach and bend. Plaintiff also stated that she could carry and lift up to 20 pounds, and push and pull up to 50 pounds, with Plaintiff additionally stating that she could walk about two (2) miles. (R.p. 185). A physical examination again revealed a normal gait with 20/20 vision in both eyes, no muscle atrophy, and normal muscle tone and strength. An x-ray revealed no significant changes in Plaintiff's lumbar sacral spine since January 2001, she had normal major joint movements, and full range of motion of the spine. Dr. Kudchadkar again opined that Plaintiff could engage in gainful activity. (R.pp. 184-187).

On May 15, 2002, Dr. Charles Jones completed a physical RFC assessment for the Plaintiff after review of Plaintiff's medical records, and opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk with normal breaks for a total of about six (6) hours in an eight (8) hour work day, sit with normal breaks for a total of about six (6) hours in an eight (8) hour work day, and push and pull without limitations. Plaintiff had no manipulative, environmental, communicative or visual limitations, with the exception of red and green color blindness, and could frequently stoop and crouch, although she could never climb ladders, ropes or scaffolds. (R.pp. 275-282); see also (R.pp. 178-179).

The medical reports and opinions of Dr. Kudchadkar and Dr. Jones provide substantial evidence to support the physical capacity as found by the ALJ. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-



5

disability]; Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

As for Plaintiff's complaint that the ALJ improperly determined that she did not meet the requirements of Listing 1.04 (the relevant subpart of 1.00), the Commissioner notes that this Listing requires

> compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine); or
>
> B. Spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy . . . ; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively . . . .

See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Defendant correctly notes that Plaintiff has presented no evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required by this Listing. Plaintiff herself testified that she could walk for long distances (i.e., could ambulate effectively), and her physical examinations consistently revealed normal muscle tone and strength with no neurological deficits. The ALJ specifically found that Plaintiff's impairments did not meet or medically equal the criteria of any impairment set forth in the Listings; see (R.p. 21, Finding No. 4); and there is substantial evidence in Plaintiff's medical records to support this finding. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how



severely, does not qualify."]; Blalock, 483 F.2d at 775 [it is the claimant who bears the burden of proving his disability]; Sullivan, 493 U.S. at 530 [Plaintiff has the burden of showing that his impairment matches a Listing]. This claim is without merit.

## II.

As for the extent of Plaintiff's mental impairment, Dr. Kudchadkar found during his January 17, 2001 consultative examination that Plaintiff had no apparent mental deficiencies, intact short and long term memories, and normal thought process and behavior. (R.pp. 173-174). Plaintiff also underwent a psychiatric evaluation on April 6, 2002 by Dr. Elin Berg, who found that Plaintiff exhibited normal speech, appropriate behavior, logical and goal directed thought processes, full orientation, and no suicidal or homicidal ideations. Dr. Berg also found that Plaintiff was very sociable and was socially unimpaired, although she was mildly impaired cognitively due to a reduced attention span. He diagnosed Plaintiff with a moderate, major depressive disorder and assigned her a GAF score of 50.[4] (R.p. 183).

Psychologist Edward Waller completed a psychiatric review technique form on the Plaintiff on April 15, 2002, in which he opined that Plaintiff had mild limitations in her activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence or pace, and no episodes of decompensation. (R.pp. 283-297). In a separate mental RFC assessment, Dr. Waller opined that Plaintiff was capable of

---

[4]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).

7



performing simple tasks for two plus hours without supervision, and although she would likely miss an occasional work day due to mental problems, she could make simple work-related decisions and accept assistance from others in a job that did not require contact with the public. (R.p. 299).

Plaintiff went to the Columbia Area Mental Health Center on November 19, 2002, where she was seen by Registered Nurse Catherine Clapham. Nurse Clapham assessed Plaintiff with a major, single episode depressive disorder without psychotic features, and assigned Plaintiff a GAF score of 53.[5] (R.pp. 237-244). A second evaluation at the Columbia Area Mental Health Center on December 23, 2003, this time performed by physician Franklin Brown, found Plaintiff to have normal speech, depressed mood, no delusions, no evidence of psychosis, logical and goal directed thought processes, and good attention and concentration. Dr. Brown assessed recurrent major depressive disorder and assigned Plaintiff a GAF score of 54. (R.pp. 235-236).

A second psychiatric review technique form was complete by psychologist Manhal Wieland on February 13, 2003, in which Dr. Wieland opined that Plaintiff was moderately limited in her activities of daily living, moderately limited in maintaining social functioning, moderately limited in maintaining concentration, persistence and pace, with no episodes of decompensation. (R.pp. 253-266). Dr. Wieland also completed a mental RFC assessment in which he opined that Plaintiff would have difficulty sustaining concentration and pace on complex tasks and detailed instructions, but that she could attend to and perform simple tasks for two plus hours without special supervision and attend work regularly, although she might miss an occasional day due to

---

[5]"A GAF of 51 to 60 indicates moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



her mental condition. Dr. Wieland also believed that Plaintiff would function better in a slow pace, low stress work environment, but that she could relate appropriately to supervisors and co-workers with recommended little contact with the general public. (R.p. 269).

Finally, Plaintiff testified that she was able to cook and clean the house, do laundry, watch her five and seven year old grandchildren, participate in the Women's Auxiliary at church and do missionary work, and that her depression did not cause her to miss too many of her church's activities. (R.pp. 389, 392-393, 399, 403).

After review of this medical record and consideration of Plaintiff's subjective testimony, the ALJ concluded that Plaintiff has a major depressive disorder resulting in no restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. (R.p. 17). Again, there is substantial evidence in the record to support the ALJ's findings and conclusions with respect to this impairment. Hunter, 993 F.2d at 35; Richardson, 402 U.S. at 408; Smith, 795 F.2d at 345; Cruze v. Chater, 85 F.3d 1320, 1326 (8th Cir. 1996) [claimant's admission is substantial evidence to support the Commissioner's decision]; see also Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991) [denial of benefits affirmed where physicians who examined claimant and heard all of his complaints failed to give an opinion that he was totally and permanently disabled].

Plaintiff's claim that she should have been found to have met the requirements of Listing 12.04 (the relevant subpart under 12.00) is also without merit. The mere fact that the ALJ found that Plaintiff suffers from a mental impairment is not sufficient to entitle her to disability; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a



9

claimant's diagnosis, but on the claimant's actual function limitations]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss"]; and in order to meet the requirements of this Listing, Plaintiff was required to present medical evidence of an affective disorder resulting in at least two of the following: a marked restriction of daily living activities; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404 subpt. P, app. 1, § 12.04(A) & (B). The medical evidence does not reflect that Plaintiff has a marked limitation in any of these areas of functioning, or that she would suffer repeated episodes of decompensation of extended duration. See Sullivan, 493 U.S. at 530; *cf.* Lozada v. Barnhart, 331 F.Supp.2d 325, 334-335 (E.D.Pa. 2004) [Although plaintiff suffered from two medically determinable severe impairments, anxiety and depression, plaintiff's condition did not meet the standards of 12.04 or 12.06].

### III.

A review of the ALJ's decision shows that he also carefully reviewed the medical evidence of record in conjunction with the Plaintiff's subjective testimony. In finding that Plaintiff's subjective allegations were not totally credible, the ALJ specifically noted the inconsistencies in her testimony and where her claims conflicted with the objective medical evidence. (R.pp. 18-19). The undersigned can find no reversible error in the ALJ's findings and conclusions. Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective



10

medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; see Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

## IV.

Finally, at the hearing the ALJ proffered a hypothetical to the vocational expert which reflected the residual functional capacity found to exist by the ALJ. (R.p. 412). In response to this hypothetical, the vocational expert identified several jobs which Plaintiff could perform with her limitations, considering her age and educational background. (R.pp. 412-413). While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d at 694; see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

### Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision



(i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 29, 2005